Angela Campbell for the appellant Kenny Smart. I'd like to start today by focusing on what we think is one of the most egregious errors in this case, and that is the failure to turn over exculpatory material evidence to the defendant prior to trial. We think that when examining this evidence, there can be no question that the suppression of the evidence undermines the confidence of the conviction that Mr. Smart is currently incarcerated for. Now we've identified two violations of the government's responsibilities under Brady v. Maryland, and we had identified those for the district court. Materials, material and exculpatory materials that were not turned over to defense counsel prior to trial that were identified prior to sentencing. The district court agreed that this was unacceptable, that the failure to turn it over was a violation not only of a protective order, but of the order that the government's attorneys were operating under, but also just unacceptable in general for their duties. However, the court erred in finding that the standard under Smith v. Cain, that there was a reasonable probability that the result would have been different. When you look at this case on its whole, when you look at all of the problems with this case, and you look at the evidence that was presented in the case, and the problems that we've identified in our brief, there really can't be a question that this doesn't satisfy the standard of Smith v. Cain. So for example, there are hours and hours and hours of pull camera footage that was turned over. Pull camera footage that the government relied upon for a warrant, the government talked about in its offense conduct, the government referenced it and had in the pre-sentence report, but yet somehow the pull camera footage of the actual raid, the time when Mr. Smart was accused of possessing that firearm, that wasn't material. That wasn't exculpatory. That wouldn't have provided any source of doubt for the jury. Well, exactly how was it exculpatory? Sure. No matter how you look at it, under which version you look at it, it's exculpatory. So the video shows that the government's witness, Lometa Welch, no matter how you look at the video, wasn't truthful. At worst for Mr. Smart, she wasn't truthful in if you take that the last car that shows up is her car. She wasn't truthful when she said someone else was with her and someone else purchased cocaine from her when she went into that house 45 minutes before the search warrant. In addition, it would have shown that she wasn't truthful that she met with a person named Ms. Harper who was supposed to be in that house supposedly. But the video shows that person didn't leave. If that car really is Lometa Welch's, the last one on the video, Ms. Harper didn't leave and she later says she wasn't even there. So she had to be not telling the truth or mistaken or something during her testimony. That's at worst for Mr. Smart. It would have provided impeaching evidence, right? And then tell me how that would have then made a difference. That's at worst. At best, it shows she wasn't there at all during that time frame. And in a case like Smith v. Cain, the case that establishes this standard is an impeachment case. It's when an eyewitness is testifying to something and there's evidence that shows that what they're saying wasn't true. That is material. That satisfies the Brady Standard. And in this particular scenario, we don't know because we didn't get an evidentiary hearing what she would have said, which car was actually hers. It could actually be that none of those cars were hers and she was never there that night. How it's exculpatory is the gun itself wasn't found on Mr. Smart. It was found in the residence where there were other individuals that were involved in the sale of drugs. The gun that was found in the residence was placed on Mr. Smart by Ms. Welch. She says, I looked into the room. I was going to buy drugs from him, but he was asleep. But the gun had his DNA on it. And as I understand, seven witnesses saw him with the gun when he was possessing or selling crack. Not exactly, Your Honor. First off, there are two counts here. So you have to look at each one as it's exculpatory for any particular count because he has consecutive sentences. So one of those is selling and possession, and one of those is 924C, possessing and furtherance of drug trafficking. The whole reason they wanted Ms. Welch is that she was saying she was going there to buy drugs. That was the purpose of going there. But he was asleep, so she bought them from a different drug dealer at the house. If it turns out that that wasn't accurate, that she wasn't there to buy drugs for him, and mind you, he didn't have drugs there. He didn't have drugs on him. He didn't have drugs in the house. He didn't have drugs in his car. So how she could be buying drugs from someone who didn't have any drugs is a different question. But if you take away that connection to him and the drugs, that takes up a 924C count. Now you're talking about these other witnesses. Yeah, okay, right, exactly. What about the other witness? On a different day, and those have their own problem. That goes into the Corey Turner statement. We have these two individuals who admitted that they had written statements that they now say aren't true to try to exculpate the other person selling drugs in the house. They have all sorts of reasons to manipulate their evidence. They weren't ever charged. They were admitted people involved with drug trafficking. And their two statements, they lived together. Their two statements were completely contradictory to each other. Corey Turner was not a government witness, right? He was. He was listed as a government witness. He never testified. He didn't testify. Once they interviewed him and found out the exculpatory information that they didn't turn over. He was prepped. He was there for trial prep. Okay, so what was exculpatory in his statement that wasn't turned over? He takes out the other witnesses. The other two witnesses, the other two civilian witnesses, Charles Loggins and Heidi Knipsue, he says, I was there at their house. I was the supplier of drugs to Mr. Smart. He didn't have a gun. And not only was I there, I was there multiple times. He never had a gun. That's in direct contravention of what they're saying, which is every time he was there, he would lay a gun down on the counter and he would threaten everybody with it. And here's this gun, right? That's what Mr. Loggins says. Now, Ms. Knipsue says she only saw it once. She's later prompted by the government to try to say it was more than once, but originally she says once. And he takes the gun out of that house. He says, I'm there too. There is no gun. And I knew him. I know him. I would be surprised if he had a gun. And he didn't know how to cook crack. So this idea that he's coming there multiple times a day to cook crack cocaine for these two crack addicts, when he doesn't know how to cook crack, it would have caused at least something for the jury to think about. Now, would, in the end, the jury have decided something different? It's hard to know, but that's not the standard. It's a reasonable probability that it could have been differently. It could have been different. Counsel, as to the Corey Turner interview report that was not provided, how do you respond to the argument that that same information was already available to Mr. Smart? Then why did they prep him for trial? I mean, yes, here's what really happened is that we identified that he would have been a good witness for Mr. Smart. Mr. Smart wanted him to testify. That's his ineffective assistance of counsel argument. We raised that in our motion for a new trial. It wasn't until we raised that question of like, yeah, you know what, this was good enough. They should have called him. That's grounds for a direct challenge while he's on the criminal case, not a post-conviction. Direct challenge that that was ineffective. This person is taking the gun out of his hands during drug deals. That takes out the 924C. So we raised that. It isn't until we raised that that they're like, oh, yeah, we also interviewed him right before a trial, and he said it clearer, even clearer, no, he didn't have a gun. I would be surprised he didn't have a gun. He wasn't into that. And I was there, and he didn't have the gun, right? So I think that it's material in the sense that if it was so exculpatory, which we think it was exculpatory enough that defense counsel should have called him for ineffective reasons, but then why are they prepping him and then deciding not to use him? All questions we can't answer because we didn't have an evidentiary hearing. And so at the very least, you have to question this case. So many things in this case, like what are the odds that everything goes wrong in this one case? The poll camera footage goes missing? Like just that section? And it shows that their witness isn't telling the truth? An interesting proposition. As I'm hearing the argument, it's exculpatory because if they'd have produced it, counsel might not have been ineffective. Right? If he'd done his job. I mean, this is why we have to raise an effective argument. I mean, the easy answer is... That one, though, that one sounds like 2255 material. I mean, all of it is 2255 material, but it's not exclusively 2255. No, no, I understand. I understand. Right. But I don't think we can raise it just on 2255 because his defense would be, I didn't have that video. How could I possibly have crossed her better if I didn't have the video of the car? I mean, the answer would be you should have identified that that was the only section missing. I mean, the rest of it wasn't missing, but that section was missing. I mean, I think you have to raise it now. I'm not questioning that. Yeah. And I think it's clear enough now. Why wait that long? I mean, we've got a situation where there's a gun, and we have a problem with the DNA or whatever also, but even if the DNA is your answer, like his DNA is on that gun, okay, that doesn't give you 924C. You still have to have a connection to a drug trafficking offense, and the only way they get there is through inappropriate 404B evidence of his prior convictions, saying he did it before, so he must have done it this time. The use of Heidi Knipsue, who they didn't turn over the poll camera footage, and that's Loretta Welch, or Heidi Knipsue and Charles Loggins' information, which they didn't turn over the Corey Turner information. So no matter which way you get there, I think you have enough here to reverse for a new trial. I'll reserve the rest of my time for rebuttal. Thank you. Thank you. Ms. Tubbs. May it please the Court. Mackenzie Tubbs on behalf of the United States, and I tried this case. I'd like to spend, of course, the majority of my time talking about the motion for a new trial and the alleged Brady violation that Ms. Campbell spent most of her time about this morning. The poll camera video was not material, and it wasn't material because it was cumulative, it was not exculpatory, and it was only of limited impeachment value. Much like in the case of Ruzicka, which the government cites in its brief on page 30, this evidence was cumulative because Mr. Smart knew what Lameda Welch's testimony was with or without the poll camera evidence. Mr. Smart knew that Ms. Welch intended to say, based on the interview reports, that she went into the residence and that she saw the individuals she identified, including Ms. Harper, and that was true without the poll camera video. The government certainly disagrees with Mr. Smart's contention that Lameda Welch said her friend went into the residence with her. That is simply not what is contained in the interview reports at dockets number 176-4 at page 5 and 176-6 at page 2. Further, at trial, Ms. Welch did not testify about that either. I think Ms. Campbell might have, I think in her argument, suggested that the poll camera supported that Ms. Welch wasn't even there. Is that true? And that might be a little bit bigger of a problem, right? The government certainly disagrees that the poll camera video does not show Ms. Welch. The government's position is that this material is not exculpatory and is, in fact, inculpatory. The government has identified... You agree? What's the first proposition? That the video shows or doesn't show she was there? The government's position is that the video shows that Ms. Welch was there. It shows an individual showing up at the same time that Ms. Welch describes in her testimony. Her testimony at trial was that she showed up shortly before the warrant. The timestamp on that video is that she showed up at 4.18 a.m. and the search warrant was executed at 5 a.m. That poll camera footage corroborates what Ms. Welch said about the timing, as I just mentioned, that she showed up shortly before the search warrant, as well as the contents of her interview statements. It shows that she showed up with a friend. She gets out of the passenger side of the car in the video, and that she stayed a few minutes and left. Now, the parties do agree on one thing. The district court did err in discussing that second clip, the order of the second clip showing two individuals. The order is correct that that clip came before, and so the district court's order denying the motion for a new trial does get that wrong, but that does not change the nature of this video as not being exculpatory. And it is of limited impeachment value. Like the case of Peterson, the defendant's arguments here overstate the importance of impeaching Ms. Welch, had they had the poll camera video. It is a single stable view of the hours leading up to the search warrant from one entrance of the residence. Ms. Welch was instead impeached by trial counsel on much greater issues. She was impeached based on her description of how she observed Mr. Smart inside the house, and of course, that was the crux of her testimony on this issue. What she observed when she went inside the house. The poll camera changed none of that. Ms. Welch was also impeached about her inconsistent description of the gun that she described being next to Mr. Smart. She was critically impeached on her long-term use of drugs, and her memory, and her paid preparation of a letter to pardon one of the other individuals in the house. This poll camera video was not material. And the district court's order denying the motion for a new trial should be affirmed. Moving on to the statements by Corey Turner. First, this report was not suppressed. It was a report that was disclosed the day that it was prepared. And it was a report of an interview that occurred in June. The report was prepared in preparation for Mr. Turner's sentencing, not for the nefarious purposes that defense counsel suddenly suggests today. The June report contains the exact words that the defendant today claimed is the exculpatory material that was in fact parroted in the February interview reports. In the February report, which is the first February report, which is at docket 176-1, paragraph 17 says, Turner stated Smart did not know how to make slash cook crack cocaine. The June report that was disclosed later said, when asked if Turner ever saw Smart cooking crack cocaine, he responded, nah. Turner said he would cook crack because Smart doesn't know how. Those exact facts were available to the defense before trial. What about the gun? Does it cover the gun as well? It does, Your Honor. In the February report at paragraph 25, it states, Turner never observed Smart with a firearm. In the June report at paragraph 11, it says, Turner never saw Smart with a firearm. So the June report was turned over, but the February report was not. Is that right? The other way around, Your Honor. The other way around. Yes. The February report was provided, but the June report was not. That is correct, Your Honor. And the June report had not been prepared, as I said, and it was disclosed the day that it was prepared. And certainly, if there had been any new evidence from that interview, regardless of if a report had been prepared, the government would have written a letter making a disclosure, but that was not necessary here because that report did not contain exculpatory evidence. The reality is that at all times, the parties knew that there was little value to Mr. Turner's testimony. He did not see Kenny Smart with a gun, but he also testified, or he also, excuse me, in his interviews, discussed repeatedly supplying Kenny Smart with cocaine and crack cocaine. The parties weighed the costs and the benefits, and both the government and Mr. Smart decided that Mr. Turner's evidence that he served as a source of supply for cocaine for Mr. Smart was not evidence worth presenting at trial. I'll move on now to the evidentiary issues, particularly the admission of the prior convictions. And Mr. Smart certainly relies on Turner, but as this panel knows, Mons makes it clear that the standard in Turner does not apply in this case as it is here where the defendant places his knowledge and intent at issue during trial. These convictions were certainly probative to a material issue at trial, that is whether Mr. Smart was a felon and had knowledge that he was a felon. In addition, they were substantive evidence. They mirrored the trial facts much more closely than much of the case law in this circuit that goes even broader and allows things that are much more disparate to be admitted. Here, the evidence of those prior convictions showed that in the past, Mr. Smart had cocaine, a gun, and $1,000 in cash. It was relevant and probative to his knowledge as to the felon in possession count that he knew it was a crime to possess a gun as a felon. And as to the 924C, it was certainly probative to his motive. It was the government's burden at trial to prove that he possessed the firearm in November of 2022 for the purpose of furthering his drug trafficking activity. And this certainly showed his motive and intent as to why guns are possessed with drugs. And certainly, any error on this issue was cured by the court's limiting instruction. At Mr. Smart's request, a limiting instruction was not given during the probation officer's testimony, but was given during the presentation of the substantive evidence of the traffic stop. So it was given at that time and then also in the final instruction. Counsel, I'd like to make sure we have time to talk about the ACC designation issue. Yes. It seems to me that the argument that is made by Mr. Smart is precluded by the McNeil case. But there's a recent Eighth Circuit decision, United States v. Perez, 2022. It seems to me that that may affect the analysis here. And we don't have any briefing or 28J on that. How does that affect whether or not Mr. Smart is a career criminal? Your Honor, it does affect it. In that case, the government is not refiling for rehearing. And there is certainly litigation ongoing in other circuits that the government could argue. But it appears likely that this holding does have a significant impact on this issue. And the government would gladly respond to any 28J letter filed by Mr. Smart. So are you agreeing that his Iowa drug convictions for crack cocaine possession with intent to distribute do not qualify? I believe that the holding in Perez, Your Honor, does cast doubt on whether these are qualifying offenses. And they are, in Perez, as you know, they are the same offenses that Mr. Smart was convicted of. Yes, Your Honor. So, wait a minute, are you conceding that question? There is litigation ongoing in other circuits, Your Honor, which the government would argue is certainly persuasive. But we do recognize the authority in Perez on these exact same convictions. The holding that that defendant could not be sentenced as an armed career criminal because the Controlled Substance Act excluded. I blew a fan, I can never say it correctly, and I told myself I'd try to not say it. That holding certainly has an impact in this case, and the government... Well, let's see if we can close the loop. Has an impact or compels an outcome? Your Honor, I do think, given that the government has not filed for rehearing here, and that the litigation ongoing in other circuits would only be used for comparison, certainly we would agree that it compels an outcome here. Okay, so you'll concede that this has to be remanded on the ACCA question? Yes, Your Honor. Thank you, I appreciate you working through the different angles there with me. So with the last minute of my time, Your Honor, I will address what one of the ineffective assistance of counsel claims. And I do think that several of those claims here are ripe for consideration, and that is compelled by the precedent of Staples. Certainly, Mr. Smart contends that his counsel should have asked specific cross-examination questions, should have called witnesses, including his girlfriend, including Mr. Turner, and that is thoroughly resolved by Staples, which discusses that those considerations are virtually unreviewable on... Looking back, certainly every cross-examination could be improved on. But here, those questions can be resolved that Mr. Smart's trial counsel was not ineffective. There were good reasons for not calling each of those witnesses, and the cross-examination that he did of the witnesses, Ms. Welch, Ms. Kipnusu, and Mr. Loggins, was thorough and did address several of the issues that Mr. Smart raises in his ineffective claims. For those reasons, Your Honor, we would ask that, the government would ask that this court affirm Mr. Smart's convictions. Thank you. Thank you, Your Honors. I would frankly disagree that the government's contention of this evidence as being immaterial is appropriate. The video, no matter if you use this clip that the district court thought was Lamenta Welch, or you use the clip that the government says is Lamenta Welch, shows that what she said at some time wasn't accurate, and she was not cross-examined about it, and that transaction could not have occurred. If you take the government's position that the last car that was there was hers, then that person's in the house for less than three minutes. And in that time, supposedly does two drug transactions, tries to wake up Mr. Smart, can't, sees the gun, goes and finds Mr. Brown, gets drugs from Mr. Brown, gets drugs apparently for the person that's now been left in the car, which is different than what her statement is. You can read her statement. She said two of them did two transactions, each for $20. And it ignores the fact that Ms. Harper doesn't leave the house after that transaction. She is not in the house. So she says she got the drugs. She talked to Ms. Harper. Ms. Harper went and got Mr. Brown. Absolutely, she was there, but she's not. On the video, she's not. And so it is clearly exculpatory because it shows that she wasn't there at that time to buy drugs from Mr. Smart, and that what happened didn't happen that way. Or she's there hours earlier at the time that the district court thinks she's there, at which point she's wrong about the time frame. And the defense attorney would have then had been in the position of determining whether or not there was something else about that that was something that could be used on cross-examination. For example, still, Harper's not there, and it's at 1 o'clock in the morning. The defense counsel would have, at that point in time, been able to look at the evidence to determine whether or not there was evidence that Mr. Smart was even at the house, much less asleep at 1 o'clock. All of this is exculpatory. This is how they put this gun and drugs together, is through Ms. Welch and through the two witnesses that Mr. Turner says aren't telling the truth. How about Corey Turner's statement? Yes. Ms. Tubbs says that the essence of that was provided to trial counsel. The quotes seem pretty compelling to me. Right, because it was an evidentiary hearing, and we can't challenge statements that are just made. Like, for example... No, no, no, that the substance had been turned over is my point. The substance of Corey Turner's statements had been provided to defense trial counsel. The statements he made in February have been turned over in that report. Looking at the two reports, the June report is clearer and more exculpatory. It says not only that he didn't see him with a gun, that he didn't have a gun, he would not expect him to have a gun, he doesn't know how to crack cocaine, and that he was there frequently, and so he did not believe that he had a gun. That's a much stronger witness for the defense than February. Now, I would concede that February, he should have been called. You know, he's cooperating with the government. He was Mr. Smart's roommate in prison, and so that whole scenario is, yeah, and he's saying he's his supplier, his drug supplier. He has no reason to take the gun off Mr. Smart. So yeah, if it's so exculpatory in February, counsel should have called him. And if it isn't, then why is the government calling it impeachment evidence in their briefing? Why does the government say that June would have just been impeachment of a non-testifying witness? If it's impeachment, then it's different. They recognize that it's stronger. And if you look at the reports, the dates that they're prepared, this is why you have to have an evidentiary hearing on these kinds of things. The dates that they're prepared show you that other ones are prepared when the interviews happen. Why is this one prepared months later? So we respectfully submit that it was a violation. Thank you. Thank you. Thank you, counsel. The case has been thoroughly briefed, well argued, a helpful argument. We'll take it under advisement. Does that complete the morning's arguments? Yes, Your Honor. Very good. The court will be in recess until further call. Thank you.